369 A.2d 1096.

STATE *vs.* FRANCIS J. PAQUETTE.

MARCH 4, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin. Kelleher and Doris, JJ.

Doris, J. This case presents a question of first impression in this state. It involves an interpretation of the nature and scope of our immunity statute, G. L. 1956 (1969 Reenactment) §12-17-15, as enacted by P. L. 1969, ch. 54, §1. The statute reads as follows:

"Compelling evidence in criminal proceedings—Immunity.—In any criminal proceeding before the superior court or in any criminal proceeding or investigation before a grand jury, if a person refuses to answer a question or produce other evidence of any kind on the ground that he may be incriminated thereby, and if the attorney general, in writing, requests the presiding justice of the superior court to order that person to answer the question or produce the evidence, the said court, in its discretion after notice to the witness may order the person to answer the question or produce the evidence. In deciding such matters the presiding justice shall consider whether the person may be incriminated, thereby in some other jurisdiction. After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter

or thing concerning which, in accordance with the order, he gave answer or produced evidence. But he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering or failing to answer, or in producing, or failing to produce evidence in accordance with the order."

The cause is before us on defendant's appeal from a judgment of conviction resulting from his refusal to testify for the state in the case of *State* v. *Brady,* Ind. No. 73-1150, after having been granted immunity under §12-17-15.

The record discloses the following pertinent facts. On June 4, 1973, defendant was indicted with Wayne R. Brady on charges of forgery and conspiracy (Ind. No. 73-1150). Brady's case was severed from defendant's and Brady was brought to trial. On April 25, 1975, the state called defendant as a witness at Brady's trial, but he refused to testify on the ground that his answer might tend to incriminate him. On the same day the Attorney General, pursuant to the provisions of §12-17-15, requested and received from the acting presiding justice of the Superior Court an order of immunity through which he sought to compel defendant to testify.

The order directed defendant to answer "* * * any and all questions dealing with Indictment 73-1150 concerning itself with conspiracy and forgery." It also provided that if he complied he would neither be "prosecuted nor be subjected to penalty nor forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with this order, he shall give answer or produce evidence, except as provided in said section 12-17-15 * * *."

The trial, at which defendant was represented by counsel, resumed on May 7, 1975. It appears from the record that defendant had given a postarrest statement to the police and had testified before the grand jury. On May 7, 1975, and again on the following day defendant, claim-

ing a fifth amendment privilege against self-incrimination, twice declined to answer substantive questions because to do so, he argued, would be to waive any future claim of privilege. Through his attorney, he advised the trial justice that he was claiming a fifth amendment privilege because the immunity statute was ambiguous and he doubted whether the granted immunity protected him against prosecution for prior perjury before the grand jury if his trial testimony differed from his previous sworn statements. He argued that if he were not so protected, his trial answers would be incriminating.

The trial justice advised defendant that the immunity order left him no valid privilege. In explaining the extent of the immunity granted to defendant she spoke as follows:

> "Under the law in Rhode Island, 12-17-15, once the Court gives you immunity by law, '. . . that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter or thing concerning which . . .' he gives answer or produces evidence.
>
> \* \* \*
>
> "No matter what you say on the stand today which may incriminate you, the State of Rhode Island cannot prosecute you because of those answers."

Notwithstanding these statements by the trial justice regarding the extent of the grant of immunity, defendant's counsel persisted in his demand for a clarification of both the statute and the immunity order, relying at least in substantial part on his client's statement that he had been told "by the Attorney General's Department after he was granted immunity, to wit, that he would be prosecuted for contempt and perjury if he changed his story." Despite the absence of any denial from the Attorney General's department, the trial justice insisted that ample clarification had been provided and reiterated in general terms that defendant had "been given immunity from prosecution."

The trial justice made repeated attempts to induce de-

fendant to testify and offered him numerous opportunities to purge himself after she had cited him for contempt. The defendant persisted in his refusal to testify and, as a result, the trial justice, invoking the terms of Super. R. Crim. P. 42(a), cited him on two occasions for contempt and sentenced him to six months on each citation. The sentences were to be served consecutively to each other and to the sentence he was then serving.

On the second day of defendant's refusal to testify, the trial justice granted Brady's motion for judgment of acquittal on all counts.[1]

## I

The defendant initially raises the specific question of whether a grant of immunity under the statute precludes a prosecution for perjury based on possible prior inconsistent sworn statements made by him before the grand jury. For reasons that follow our answer to that question is "Yes."

As we noted above, the basic issue raised by this appeal involves the nature and scope of our immunity statute. The defendant's arguments now are, in essence, the same as those made by him in the court below. He contends that in the circumstances prevailing in the Superior Court it was reasonable for him to entertain a legitimate doubt that the granted immunity would protect him from a prosecution for perjury in the event that his trial testimony conflicted with his prior testimony before the grand jury. He argues that in the circumstances he was justified in standing on his fifth amendment right to remain silent; that unless it was demonstrated to him that the granted immunity was coextensive with and provided a complete substitution for the fifth amendment privilege it supported, he was not obliged to forfeit the privilege; that the im-

---

[1] The record also shows that on August 7, 1975, another justice of the Superior Court granted defendant's motion to dismiss the indictment.

munity was not self-executing; and that neither the trial justice nor the prosecutor fulfilled his burden of demonstrating to him that he was immunized from prosecution for past perjury.

Before answering the specific questions raised by defendant it may be helpful to discuss briefly the nature and scope of the immunity granted pursuant to §12-17-15. It includes any and all criminal matters concerning which he is compelled to testify and precludes the use of any evidence discovered as a result of or derived from the testimony and evidence given by the witness. *See State* v. *Vickers*, 309 A.2d 324, 326-28 (Me. 1973).

The immunity granted under our statute is "transactional" immunity rather than "use and derivative use" immunity and is broader than the fifth amendment privilege itself. The difference between transactional immunity and use immunity has been described as follows by the Supreme Court of the United States:

> "We hold that * * * immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore

insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Kastigar* v. *United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, 222 (1972).

Under this state's statute, the only way in which an immunized witness can be prosecuted is for perjury, false swearing, or contempt "committed in answering or failing to answer, or in producing or failing to produce evidence in accordance with the order." Section 12-17-15. The statute clearly confers full transactional immunity and a witness who takes the stand under a grant of immunity conferred pursuant to §12-17-15 and who testifies truthfully cannot be prosecuted regardless of prior inconsistent sworn statements. However, we hasten to point out that one who perjures himself by answering untruthfully at the trial can be prosecuted, immunity notwithstanding. Here, defendant risked prosecution only if he perjured himself by giving false testimony at the trial under the cloak of immunity.

This precise point was litigated in Illinois in 1963 in *People* v. *Walker,* 28 Ill.2d 585, 192 N.E.2d 819 (1963). Quoting Wigmore, the Illinois Supreme Court stated:

" 'But of course * * * an answer confessing under compulsion that an answer on *a former examination* was false cannot be used on a trial for perjury in the former answer: 8 Wigmore on Evidence, 3rd ed. sec. 2270, note 6; [citation omitted]. The short answer * * * is that the [immunity] statute contains no exception as to prior perjury, and that such an exception would render it invalid.

"The defendant's statements * * * before the grand jury fall squarely within the language of the statute under which he was given immunity. The falsity of those statements was shown by the testimony that he was compelled to give under penalty of punishment for contempt, after his claim of constitutional privilege had been made and overruled and after he had been granted immunity. A charge of perjury cannot,

therefore, be predicated upon the falsity of those statements." *Id.* at 590-91, 192 N.E.2d at 823.

The defendant in *Walker* had been given a grant of immunity under a statute similar to our own in order to compel his testimony at a burglary trial. He did in fact testify, but his statements varied from statements previously made by him at his probation hearing and before the grand jury. He was indicted for perjury and convicted but no attempt was made by the prosecution to prove which statements were true and which were perjurious. The defendant claimed, however, that the prior statements were untrue. The Illinois high court held that, to be valid, the statutorily granted immunity must be sufficiently broad to preclude *"all* future punishment for *any* offense to which the evidence relates." *Id.* at 590, 192 N.E. 2d at 822. (Emphasis added.) The court concluded that the statute contained no exception for prior perjury and that if such an exception existed the statute would be rendered invalid. The judgment of conviction was therefore reversed. *Accord, Kronick* v. *United States,* 343 F.2d 436 (9th Cir. 1965).

We concur in these sentiments and, consequently, we find no merit to defendant's argument that statements made under the grant of immunity might be used by the state to prosecute him for prior perjury before the grand jury.

The question remains whether defendant was fairly apprised that the immunity granted was broader than his fifth amendment privilege. The defendant argues that if immunity is to substitute for a witness' fifth amendment privilege, the immunity conferred must be at least as broad as the privilege it replaces. He further argues that the burden of demonstrating that the immunity granted is coextensive with the fifth amendment privilege is on the state. A witness has, we think, a constitutional right to

stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity as broad in scope as the privilege it replaces is available and applicable to him. *Stevens* v. *Marks*, 383 U.S. 234, 246, 86 S.Ct. 788, 794-95, 15 L.Ed.2d 724, 732-33 (1966). We hold that the state must affirmatively demonstrate to the witness that a valid immunity from prosecution is his before it may hold him in contempt for refusing to answer questions that would otherwise be incriminating.

We are not satisfied that under the circumstances of this case defendant was clearly advised that he had received immunity from any prior inconsistent statement that had been made before the grand jury. Although the trial justice attempted to advise defendant by explaining both the order of immunity and the statute, she did not advise and demonstrate to defendant that he could not be prosecuted for *prior inconsistent statements* before the grand jury which it is apparent was defendant's chief concern. The simple answer in this case would have been a statement by the trial justice that defendant had transactional immunity under the statute, as we have indicated above, and that he could not be prosecuted for any prior inconsistent statements involving the same transaction made before the grand jury.

The defendant's next argument is that because he had not been fairly apprised that the immunity granted was coextensive with his fifth amendment privilege he could not be held in contempt. We agree. Since we conclude that the defendant had not been fairly apprised of the extent of the immunity granted, his refusal to answer the prosecutor's questions in the circumstances was not contemptuous. The finding that the defendant was guilty of contempt is error and must be reversed.

The defendant's appeal is sustained. The judgment of

conviction is reversed and the cause is remanded to the Superior Court.

Petition for reargument denied.

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Barbara Hurst,* Asst. Public Defender, for defendant.