199 N.J. Super. 56 (1985)
488 A.2d 250
JOSEPH FULGINITI, PLAINTIFF-RESPONDENT,
v.
CAPE MAY COUNTY SHERIFF'S DEPARTMENT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 1985.
Decided February 25, 1985.
*58 Before Judges MICHELS, PETRELLA and BAIME.
Tuso, Gruccio, Pepper, Giovinazzi & Butler, P.A., attorneys for appellant (Cosmo A. Giovinazzi III, on the brief).
Bernard P. Sypniewski, attorney for respondent, Joseph Fulginiti.
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent Civil Service Commission (James J. Ciancia, Assistant Attorney General, of counsel; Lewis A. Scheindlin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
This appeal involves a question of the interpretation of a Civil Service statute granting immunity with respect to testimony elicited in a Civil Service proceeding. The issue is whether that immunity extends not only to criminal proceedings, but to civil matters. Although the statute has been in existence since 1908, we can find no reported decisions in this State interpreting the statute.
The facts relevant to this appeal are essentially undisputed. Joseph Fulginiti had been employed as a corrections officer since 1977 by the Cape May County Sheriff's Department and was stationed at the Cape May County Jail. He testified as a witness in an administrative hearing on February 23, 1983 before an Administrative Law Judge (ALJ) on behalf of another corrections officer, Wanda Lee Rogers, who was charged with sleeping on duty during the midnight shift.
In connection with the defense of Rogers' case, Fulginiti testified that sleeping on duty was quite common by correction officers on the night shift at the Cape May County Jail. He testified that he had observed others sleeping, and on one occasion orally reported it to a sergeant. He also said he had observed such sleeping on duty on many other occasions which he did not report, even though it was a violation of the standing *59 rules. Fulginiti also testified that he himself had slept while on duty.
After he had so testified under oath Fulginiti received a notice of disciplinary action on April 20, 1983 charging him with sleeping on duty, failure to report known violations and failure to file written reports of correction officers who had slept while on duty. A departmental hearing was held at which Fulginiti was found to have violated departmental regulations and procedures. He was dismissed from his position effective May 17, 1983. On Fulginiti's appeal from the dismissal to the Civil Service Commission (Commission) the matter was referred to an ALJ for a hearing. The hearing before the ALJ was based solely on the transcript of Fulginiti's testimony at the Rogers' hearing. That was the only evidence supporting the charges against Fulginiti. After the hearing the ALJ issued a comprehensive opinion discussing the scope of the immunity granted in N.J.S.A. 11:1-15. He concluded that Fulginiti's testimony in the Rogers' hearing was admissible and could support disciplinary charges against him because N.J.S.A. 11:1-15 did not, in his view, afford immunity in other than criminal matters and hence could support the disciplinary charges. Accordingly, the ALJ recommended that the disciplinary charges against Fulginiti be sustained and that the appropriate penalty for his conduct was removal. The ALJ thus did not find it necessary to decide another issue which had been raised by the Sheriff's Department as a basis for denying immunity, which was whether plaintiff had been properly served with a subpoena in the Rogers case.[1]
On appeal the Commission reversed the initial decision of the ALJ. The Commission held that N.J.S.A. 11:1-15 granted total and complete immunity to Fulginiti with respect not only to criminal proceedings, but also in protecting him from removal from his Civil Service position. He was awarded back pay from *60 the date of his removal to the date of reinstatement. The sheriff appealed that final determination to this court. We granted a stay of the Commission's decision pending appeal.
On this appeal the Sheriff's Department contends that the Commission improperly construed N.J.S.A. 11:1-15 as proscribing disciplinary sanctions based on testimony given in a Civil Service hearing.[2]

I
We are cognizant of the principle that the interpretation of a statute by an agency charged with implementation and enforcement of that statute is entitled to due deference. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978); Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93 (1973), and Helfrich v. Hamilton Twp., 182 N.J. Super. 365, 374 (App.Div. 1981). Nevertheless, in the final analysis, interpretation of a statute is a judicial function, Service Armament Co. v. Hyland, 70 N.J. 550, 561 (1976), which cannot be relinquished to an administrative agency.
Furthermore, although the usual standards of review are whether the determination of the agency is arbitrary, capricious or unreasonable and whether it is supported by sufficient *61 credible evidence in the record as a whole, see Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980) and Campbell v. Civil Service Dept., 39 N.J. 556, 562 (1963), this is not an appeal from a factual determination by the agency. Hence, those standards of review do not apply here. Also inapplicable is the presumption of reasonableness attributed to agency action. See East Paterson v. Civil Service Department, 47 N.J. Super. 55, 65 (App.Div. 1957).

II
As we view it, the significant issue raised on this appeal is whether the immunity offered by N.J.S.A. 11:1-15 applies only to subsequent criminal proceedings or applies as well to subsequent civil proceedings, particularly disciplinary proceedings. That statute had as its source, L. 1908, c. 156, § 8. N.J.S.A. 11:1-15 provides as follows:
No person shall be excused from testifying or from producing books or papers before the commission upon the ground that the testimony or evidence, books or documents required of him, may tend to incriminate him, or subject him to a penalty or forfeiture, but no person shall be prosecuted, punished, or subjected to a penalty or forfeiture for or on account of any act, transaction, matter or thing concerning which he shall, under oath, have testified or produced documentary evidence. (Emphasis added).
Testifying falsely in such proceedings before the Commission is made a "misdemeanor" by N.J.S.A. 11:1-17. (See N.J.S.A. 2C:1-4d).
A review of the Commission's interpretation of N.J.S.A. 11:1-15 is useful. The Commission analyzed the two important clauses of that statutory provision. The first such clause provides that no person may refuse to testify before the Commission on the grounds that such testimony "may tend to incriminate him or subject him to a penalty or forfeiture." The second clause provides that an individual who testifies may not be "prosecuted, punished or subjected to a penalty or forfeiture" on the basis of his testimony. The Commission reasoned that these clauses referred not only to criminal consequences by reference to the concepts of incrimination, prosecution and *62 punishment, but also other consequences because of the use of the words "penalty" and "forfeiture." Hence, it concluded that our Legislature did not intend the grant of immunity to be limited to criminal proceedings. The Commission further reasoned that the purpose of this statutory provision for immunity[3] was "to encourage complete and truthful testimony in Civil Service proceedings by removing the fear that such testimony in itself will lead to adverse action against the person so testifying." With respect to encouraging truthful testimony, we note here that it would seem that the misdemeanor penalty for false swearing also would encourage truthful testimony.
The Commission distinguished the cases relied on by the ALJ in his ruling on the basis that those cases involved criminal statutes. The Commission further concluded that because this immunity provision was part of the Civil Service Act it referred essentially to Civil Service hearings.[4] The Commission was of *63 the view that reading N.J.S.A. 11:1-15 as applicable only to criminal proceedings would run afoul of the principle that the purpose of a statute should not be frustrated by an unduly narrow interpretation and that the intent was to encourage disclosure in Civil Service proceedings. It felt that this latter intent would be unduly limited by confining the immunity from prosecution to criminal proceedings.
In our effort to determine the legislative intent here, we must consider not only the language of the statute, but the circumstances around the time of the adoption of that statute. See AMN, Inc. of N.J. v. South Brunswick Twp. Rent Leveling Board, 93 N.J. 518, 525 (1983). Although there is no specific legislative history regarding the precise circumstances which gave rise to the enactment of the predecessor to the present compilation of N.J.S.A. 11:1-15, there is a distinct similarity between that provision and that in the Act of February 11, 1893.[5] See Annotation, "Validity and adequacy, as a matter of constitutional law, of federal statute granting immunity in lieu of privilege against self-incrimination  federal cases," 100 L.Ed. 533, 537-539 (1955). The 1893 statute provided:
No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the Commission, ... on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding: Provided, That no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying. [Emphasis supplied.]
*64 The language of the 1893 federal statute was adopted in response to the decision in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), which held invalid an immunity provision in a predecessor statute. The Supreme Court subsequently held that the Act of 1893 provided an adequate substitute for the Fifth Amendment privilege against self-incrimination. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); see also Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). Thereafter the 1893 Act became the model for various federal immunity statutes. See Annot., supra at 537-539.
Although the language in N.J.S.A. 11:1-15 is not identical to that in the 1893 federal act, the remarkable parallel in the chronology of events and the use of language would seem to bear out the conclusion that the federal statute was a model for our State's statute. Other than some incidental omissions or deletions of phraseology, the main distinction between the descriptive and operative clauses of both statutes is that N.J.S.A. 11:1-15 uses the word "punished" while the federal statute does not. Other statutes by and large do not refer to "punishment," although they do speak of incrimination, prosecution and penalties or forfeitures. Cases construing the 1893 Act and statutes modeled after that law have consistently limited the immunity granted by the statute to criminal proceedings and have held that the witness is adequately protected by the immunity offered by the statute. See, e.g., Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896) (Interstate Commerce Act); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673 (1906) (immunity proviso to the 1903 General Appropriation Act); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), reh'g den. 351 U.S. 928, 767 S.Ct. 777, 100 L.Ed. 1457 (1956) (Federal Immunity Act of 1954); In re Kittle, 180 F. 946 (2d Cir.1910) (immunity as to violations of Anti-Trust Act); United States v. Goldman, 28 F.2d *65 424 (D.C.Conn. 1928) (dictum as to immunity provision of Volstead Act). See Annot., supra at 537-538.
In Hale v. Henkel, supra, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, the Court upheld the immunity provisions of the 1903 General Appropriation Act which was phrased almost identically to the 1893 Act. The Hale Court stated:
The object of the [5th] amendment is to establish in express language and upon a firm basis the general principle of English and American jurisprudence, that no one shall be compelled to give testimony which may expose him to prosecution for crime. It is not declared that he may not be compelled to testify to facts which may impair his reputation for probity, or even tend to disgrace him; but the line is drawn at testimony that may expose him to prosecution.

* * * * * * * *
The interdiction of the 5th Amendment operates only where a witness is asked to incriminate himself,  in other words, to give testimony which may possibly expose him to a criminal charge. [Id. at 66-67, 26 S.Ct. at 375-76, 50 L.Ed. at 662 (emphasis added)].
Significantly, both the statute under review in the Hale case and the 1893 Act also provided an exception from the immunity for perjury committed while testifying under the Act.[6]
In our search to discover the legislative intent, the statute must be read in light of the prior law, the mischief sought to be eliminated and the proposed remedy. Brewer v. Porch, 53 N.J. 167, 174 (1969); N.J. Ins. Underwriting Ass'n v. Clifford, 112 N.J. Super. 195, 200-201 (App.Div. 1970). Furthermore, "the Legislature must always be presumed to favor the public interest as against any private one." Mullen v. Jefferson Twp. Bd. of Ed., 81 N.J. Super. 151, 160 (App.Div. 1963).
*66 There is no doubt that the word "punished" can refer to criminal consequences. It is a term generally used with respect to criminal matters. In Black's Law Dictionary 1010 (rev. 5th ed. 1981), the term "punishment" is defined as:
Any fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him, or for his omission of a duty enjoined by law. A deprivation of property or some right. But does not include a civil penalty redounding to the benefit of an individual, such as a forfeiture of interest. [citations omitted].
Other than the reference to the word "punished," both the federal and the State statutes use similar language, i.e., "incriminate," "prosecuted," "penalty" and "forfeiture." We are satisfied that the words "incriminate" and "prosecuted," refer to criminal consequences. See Black's Law Dictionary, supra at 690, 1098; see also Hale v. Henkel, supra, 20 U.S. at 66-67, 26 S.Ct. at 375-76, 50 L.Ed. at 662.[7]
We are also satisfied that the terms "penalty" and "forfeiture," although arguably of broader application, in light of the history of the immunity statutes, were intended, not only in the federal law but in New Jersey's statute, to be so limited. In 81 Am.Jur.2d, Witnesses § 41 at 70, the terms "penalty" and "forfeiture" are discussed as they are normally applied to witnesses:
The rule protecting a person from being compelled to furnish evidence which would incriminate him exists not only when he is liable criminally to prosecution and punishment, but also when his answer would tend to expose him to a penalty or a forfeiture. He may not only object to testifying to the main fact which would subject him to a penalty or forfeiture, but may also refuse to disclose any one of a series of facts which together would expose him thereto. But the privilege does not protect against every penalty or forfeiture, but only *67 against penalties or forfeitures imposed as part of the punishment for crime .... [Emphasis supplied; footnotes omitted.]
There is ample case support for such an interpretation of the statute. Indeed, in Manning Engineering, Inc. v. Hudson County Park Commission, 74 N.J. 113 (1977), a federal immunity statute substantially similar to N.J.S.A. 11:1-15 was interpreted by our Supreme Court. The federal statute (18 U.S.C.A. § 2514) provided:
... No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence. [Emphasis supplied].
In considering that language the court in Manning Engineering stated:
Although the federal immunity statute refers to "penalties" or "forfeitures" in delineating the scope of the protection afforded by that provision, its protections are no greater than those provided by the privilege. It has generally been asserted that these terms refer only to suits in which the government is attempting to impose liability for certain criminal acts, In re Daley, 549 F.2d [469] at 470 [7 Cir. 1977], and not where it is seeking to effectuate some public policy apart from the criminal laws. [74 N.J. at 133-134 (footnote omitted)].
The court also stated that:
In determining whether immunized testimony is admissible, ... a distinction must be drawn between "`proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him,'" United States v. U.S. Coin & Currency, 401 U.S. 715, 718, 91 S.Ct. 1041, 1045, 28 L.Ed.2d 434, 437 (1971), quoting with emphasis Boyd v. United States, supra 116 U.S. [616] at 634, 6 S.Ct. [524] at 534, 29 L.Ed. [746] at 752 [1886], and those actions which are instituted for some reason other than to punish the person who was compelled to give the testimony. For instance, a bar disciplinary hearing, although it may deprive an attorney of his means of livelihood, does not entail a forfeiture or penalty. [Id. at 135-136 (emphasis in original)].
Likewise in Anonymous Attorneys v. Bar Association of Erie County, 41 N.Y.2d 506, 393 N.Y.S.2d 961, 362 N.E.2d 592 (1977), a statute substantially similar to N.J.S.A. 11:1-15, although not using the word "punished," was held not to bar disciplinary proceedings brought by the Bar Association against attorneys granted immunity by a Grand Jury on traffic-fixing charges. In rejecting the claim of immunity, the court construed the terms "penalty" and "forfeiture" as follows:

*68 The appellants strongly urge that the possible sanctions flowing from the disciplinary proceeding constitute a "penalty or forfeiture" within the meaning of the statute. Without doubt the sanctions which may be imposed in such proceedings may have serious consequences resulting in impairment of repute, loss of clientele, or, in the case of disbarment, loss of license to practice a profession which is their very source of livelihood. Although serious in consequence, these sanctions are not penalties or forfeitures within the meaning of the Criminal Procedure Law. The penalties and forfeitures encompassed by this immunity are those imposed or sought to be imposed as punishment upon conviction for a criminal offense committed in violation of the Penal Law or other statute of the State. [Id. at 509, 393 N.Y.S.2d at 963, 362 N.E.2d at 594 (citations omitted)].
Hence, we are of the opinion that the use of the words "penalty" and "forfeiture" both in N.J.S.A. 11:1-15 and in the comparable federal statutes were intended to refer to penalties and forfeitures resulting only from criminal proceedings.[8]
Other cases have also held that disciplinary proceedings are not considered criminal proceedings within the ambit of the type of immunity statute involved here. In Shusted v. Traenkner, 155 N.J. Super. 23, 27 (Law Div. 1977), it was held that a disciplinary action against a police officer is not a criminal proceeding, and, even though he had not been warned that his failure to appear and testify would subject him to removal from office prior to appearing before a Grand Jury, he was not entitled to "immunity" with respect to the disciplinary action. Accord, e.g., Maryland State Bar Assn., Inc. v. Sugarman, 273 Md. 306, 329 A.2d 1 (1974), cert. den. 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975); Matter of Rouss, 221 N.Y. 81, 116 N.E. 782 (1917); Lurie v. Florida State Bd. of Dentistry, 288 So.2d 223, 228 (Fla. 1973) (dissenting opinion); Annot., 62 *69 A.L.R.3d 1145 (1975). Likewise, federal cases have also held that immunity did not apply in subsequent civil proceedings including disciplinary proceedings. See, e.g., In re Daley, 549 F.2d 469 (7th Cir.1977), cert. den. 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977) (disbarment of attorney); Napolitano v. Ward, 457 F.2d 279 (7th Cir.1972), cert. den., 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486 (1972) (removal of judge); Childs v. McCord, 420 F. Supp. 428 (D.Md. 1976), aff'd o.b. 556 F.2d 1178 (4th Cir.1977) (revocation of engineers' certificates).
We find the rationale of such cases analogous to the disciplinary proceedings brought against Fulginiti as a correction officer. The history of immunity statutes in general and prior to the time of the enactment of N.J.S.A. 11:1-15 militates toward the conclusion that the Legislature did not intend the immunity of that section to apply in subsequent civil proceedings. Nor is the public interest of the State protected by a total grant of immunity which would extend to civil proceedings.
The Commission argues that because N.J.S.A. 11:1-15 appears in the Civil Service statute it should thus be distinguishable from other cases which have limited immunity statutes to criminal proceedings. However, federal statutes containing immunity provisions with respect to Interstate Commerce Commission hearings and even anti-trust matters are brought in what are essentially civil proceedings. As noted those statutes have not been held to offer immunity in subsequent civil proceedings.
Based on the foregoing, we are of the view that our Legislature, having enacted an immunity statute subsequent to the enactment of federal immunity statutes having the same general purpose and protecting against criminal prosecutions by removing the constitutional interdictment of the Fifth Amendment, could hardly be presumed to have gone beyond the intent of the federal statute, notwithstanding the gloss by the addition of the word "punished." There is simply no evidence that such a result was intended, and we are loath to ascribe such an *70 unstated intent to this statutory provision. Moreover, in the face of then contemporary legislative enactments regarding immunity provisions, if the Legislature had indeed intended N.J.S.A. 11:1-15 to extend immunity to civil consequences it could easily have expressly so stated. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955) (legislative will must be enforced "as written and not according to some unexpressed intention"); Hoffman v. Hock, 8 N.J. 397, 409 (1952); Petrangeli v. Barrett, 33 N.J. Super. 378, 386 (App.Div. 1954).
Our Legislature did provide for full immunity from criminal proceedings based on the waiver of the privilege against self-incrimination. We find no reason to expand the legislation beyond that of similar, contemporary legislation merely because of minor language differences. Certainly, the strictures of the criminal law have as a principle purpose the punishment of offenders. It would be anomalous not only to excuse a person from any criminal responsibility, but then to require a government agency to retain in employment, without any discipline whatsoever, a transgressing employee.
We reverse the determination of the Commission and reinstate the dismissal as imposed by the Sheriff's Department.
NOTES
[1] See infra n. 2.
[2] The Sheriff's Department also argues that N.J.S.A. 11:1-15 does not apply to Fulginiti because he was not subpoenaed to testify in the disciplinary action involving Rogers and that he had testified voluntarily. The Commission may issue subpoenas to compel testimony in Civil Service matters, N.J.S.A. 11:1-12, and may enforce those subpoenas. N.J.S.A. 11:1-13.

Fulginiti was subpoenaed for a hearing originally scheduled for February 1, 1983. That hearing was adjourned until February 22, 1983 and no additional subpoena was served. Under the circumstances we need not reach the issue of whether N.J.S.A. 11:1-15 requires the service of a subpoena before there may be a claim of immunity. The existence of the original subpoena was sufficient to provide a basis for Fulginiti to reasonably believe he was still under subpoena. Furthermore, the Commission found that plaintiff had testified under subpoena, and we are satisfied that the record supports such a finding. See Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Campbell v. Civil Service Department, 39 N.J. 556, 562 (1963).
[3] The Fifth Amendment protects a witness from being "compelled in any criminal case to be a witness against himself." A grant of immunity will supplant the Fifth Amendment privilege against compulsory self-incrimination when it is coextensive with that privilege. There are generally two types of immunity: transactional immunity and use immunity. Transactional immunity affords the witness the broadest protection. It protects the witness "from prosecution for the offense to which the compelled testimony relates." Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, 222 (1972), reh'g den. 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); State v. Kenny, 68 N.J. 17, 23 (1975). Use immunity, on the other hand, prohibits "the use of compelled testimony, as well as evidence derived directly and indirectly therefrom." Kastigar, supra 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222. Thus, under a grant of use immunity the witness can still be prosecuted if the evidence was obtained independently of the compelled testimony. In Kastigar the court determined that use immunity affords protection commensurate with that afforded by the privilege, and that transactional immunity is not constitutionally required. Id.; see In re Zicarelli, 55 N.J. 249, 265 (1970), aff'd. 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

Whether N.J.S.A. 11:1-15 is couched in language granting transactional or use immunity is irrelevant to this appeal because we hold that the provision was only intended to immunize against subsequent criminal prosecutions.
[4] The Commission also disagreed with the ALJ's conclusion that a Civil Service employee does not have a property interest in his employment, the loss of which would constitute a "forfeiture." In light of our holding that the word "forfeiture" in N.J.S.A. 11:1-15 was intended to contemplate only those forfeitures resulting from criminal proceedings we need not address this issue.
[5] 27 Stat. 443, ch. 83, codified in 49 U.S.C.A. § 46 (1950) (repealed by Pub.L. No. 95-473, § 4(b), (c) October 17, 1978, 92 Stat. 1466 to 1470).
[6] Although N.J.S.A. 11:1-15 does not provide for such an exception from immunity for perjury committed in testifying in Civil Service proceedings, N.J.S.A. 11:1-17, which is captioned "False testimony" provides: "A person who shall knowingly give false testimony before the commission or any of its members or the chief examiner and secretary shall be guilty of a misdemeanor." Hence, it is clear that the immunity of N.J.S.A. 11:1-15 would not apply to false testimony.
[7] Furthermore, although captions to statutes are not considered part of the law, see Murnick v. City of Asbury Park, 187 N.J. Super. 455, 461 (App.Div. 1982), on remand 5 N.J. Tax 406 (1983), aff'd in part, rev'd in part and remanded 95 N.J. 452 (1984); Swede v. City of Clifton, 39 N.J. Super. 366, 377-378 (App.Div. 1956), aff'd 22 N.J. 303 (1956), we do note that the caption ascribed to the particular section of the statute involved is "Incriminating testimony; immunity."
[8] Even though in more recent times statutes have been enacted which have provided for administrative "penalties" and summary penalty proceedings outside of the criminal law, those types of proceedings were not what was considered by the federal and state legislatures in the latter part of the 19th century and the early part of the 20th century with respect to the granting of immunity in situations where a witness might be required to incriminate himself. Likewise, merely because punitive damages may exist in a civil case, does not warrant an interpretation of N.J.S.A. 11:1-15 which would expand it beyond immunity from criminal proceedings.