[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an administrative appeal from a final decision of the Rhode Island Board of Accountancy. Jurisdiction in this Superior Court is pursuant to § 42-35-15 R.I.G.L.
I.
Case Travel — Facts
Plaintiff, Richard F. Saccoccia (Saccoccia) has since 1977 been a licensed certified public accountant. His license is subject to, and regulated by virtue of § 5-3-5 R.I.G.L. and any rules and regulations adopted by the Board of Accountancy which is created by § 5-3-4 R.I.G.L. and authorized to regulate the practice of public accountancy in this State.
On August 18, 1993 the Board of Accountancy (Board) acting pursuant to its license revocation or suspension authority, §5-3-12 R.I.G.L., suspended Saccoccia's license to practice public accounting for a period of two years commencing on October 1, 1993. Within the time required by § 42-35-15 R.I.G.L. Saccoccia filed his appeal from that Board decision and was granted a stay of the suspension order from another Justice of this Court pending disposition of his appeal.
Saccoccia centers his appeal primarily upon his contention that the evidence taken and used against him at the hearing before the Board of Accountancy included, primarily, evidence that he had previously given and furnished to the Select Commission investigating the collapse of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC). That previous testimony and evidence he asserts was given under a grant of immunity from the Presiding Justice of the Superior Court pursuant to § 12-17-15 R.I.G.L. (Plaintiff's Brief p. 7) Actually the grant of immunity was pursuant to Chapter 15, Section 7,P.L. 1991 being an Act establishing the "select commission" to investigate the failure of RISDIC insured financial institutions. In any event, the immunity claimed is essentially the same, from whatever statutory source. He also questions the Board's finding and conclusion that he violated Rule 4.1 of professional conduct duly promulgated by the Board, by engaging in what the Board determined to be conduct detrimental to the profession of accountancy and discreditable to the profession and, finally, that the hearing before the Board was tainted by virtue of unlawful procedure.
II.
Permitted Scope of Appellate Review Under § 42-35-15.
General Laws 1956, § 42-35-15, as amended, confers appellate jurisdiction in this Superior Court to review decisions of the various state administrative boards and agencies. The scope of review permitted, however, is limited by that statute. Fundamental in the statute is the basic legislative intention that this Court should not, and cannot, substitute its judgment on questions of fact for that of the respondent agency. Lemoinev. Department of Public Health, 113 R.I. 285, 291 (1974). This is so, even in those cases where this Court, after reviewing the certified record and evidence might be inclined to view the evidence differently than did the agency. Cahoone v. Board ofReview, 104 R.I. 503, 506 (1968). Judicial review on appeal is limited to an examination and consideration of the certified record to determine if there is any legally competent evidence therein to support the agency's decision. If there is such evidence, this Court is required to uphold the agency's factual determinations. Liberty Mutual Ins. Co. v. Janes, 586 A.2d 536, 537 (R.I. 1991); St. Pius X Parish Corp. v. Murray,557 A.2d 1214 (R.I. 1989); Costa v. Registrar of Motor Vehicles,543 A.2d 1307 (R.I. 1988); Sartor v. Coastal Resources Mgt.Council, 542 A.2d 1077 (R.I. 1988); Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607 (1977); Prete v. Parshley,99 R.I. 172, 176 (1965).
Where, however, the findings or conclusions made by an agency are "totally devoid of competent evidentiary support in the record" or by the reasonable inferences that can be drawn therefrom, then the findings made by the agency are not controlling upon this Court. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 270 (1981); Millerick v.Fascio, 384 A.2d 601, 603 (1978); DeStefanis v. Rhode IslandState Board of Elections, 107 R.I. 625, 627, 628 (1970).
The Administrative Procedure Act, G.L. 1956 § 42-35-15, permits this Court to reverse, modify or remand an agency decision only in those instances where it finds that substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are in violation of constitutional or statutory provisions; or in excess of the statutory authority of the agency, or made upon unlawful procedure, or affected by other error of law, or clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious or characterized by abuse of discretion or by a clearly unwarranted exercise of the agency's discretion.
III.
The Immunity Question
On March 13, 1991 Chapter 15 P.L. 1991 was approved by the Governor and became law.
That legislative enactment, entitled, an Act Establishing the Select Commission to Investigate the Failure of RISDIC Insured Financial Institutions created a nine member commission to conduct an inquiry into the direct and indirect causes of the collapse of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC). It gave to the Committee general and special powers in order to conduct its investigation including the authority and power to subpoena witnesses and the production of documents (Section 6) and the authority to request orders from the Presiding Justice granting immunity to witnesses called to testify before the Commission. (Section 7)
Section 7(c) provides in pertinent part that a witness, given immunity, could not refuse to comply with the Order granting that immunity on the:
 "basis of his privilege against self-incrimination but the witness shall not be prosecuted or subjected to penalty or forfeiture for, or an account of, any transaction or matter regarding which in accordance with the order, he gave answer or produced evidence, and no testimony or other information compelled under the order or any information directly or indirectly derived from such testimony or other information shall be used against the witness in any criminal case except he may be prosecuted and subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering or failing to answer or in producing, or failing to produce, evidence with the Order."
 Chapter 15, Section 7, P.L. 1991 mirrors in essential part our general statutory immunity to witness law, § 12-17-15 and would certainly be construed to grant "transactional" immunity rather than "use and derivative use" immunity. State v.Paquette, 117 R.I. 638, 643 (R.I. 1977) "Transactional" immunity is of course much broader than "use" immunity and protects a witness "from prosecution for the offense to which the compelled testimony relates." Kastigar v. United States, 406 U.S. 441, 453 (1972). "Use" immunity on the other hand does not permit "the use of compelled testimony as well as evidence derived directly or indirectly therefrom." Kastigar, supra, at 453.
In this case, Saccoccia was subpoenaed for purposes of both deposition and testimony before the "RISDIC" Commission. He rightly refused to do so and properly invoked his Fifth Amendment privilege against self incrimination. The "RISDIC" Commission then proceeded to obtain a grant of immunity Order from the Presiding Justice of the Superior Court pursuant to Section 7,Chapter 15, P.L. 1991. Thereafter, Saccoccia testified before the "RISDIC" Commission and gave evidence concerning his general dealings, commencing in 1980, and thereafter, with one of his accountancy practice clients, a Thomas D'Andrea. Those dealings concerned, in addition to the preparation of tax returns, the obtaining of several loans, totalling over $2,000,000 from the Rhode Island Central Credit Union for real estate entities that were unable on their own to obtain financing for their real estate projects. He testified that he was paid $23,100 for obtaining the financing for two of those properties involved. Saccoccia also testified that while all of the purchase-loan paperwork was done in his name only, and while he alone signed all of the necessary mortgage notes, he at no time ever repaid any of the mortgage note obligations, nor did he ever participate in any of the negotiations regarding the purchase price or the financing terms for the properties.
Some time after Saccoccia's appearance and testimony before the "RISDIC" Commission, the Board of Accountancy notified him that it was charging him with various violations of Board rules and regulations pertaining to his conduct as a licensed certified public accountant who was subject to those rules and regulations. That notification, dated April 23, 1993 is noted in the certified record as a "petitioner's exhibit." It properly lists and details each of the charges and the date and time for the hearing thereon. Saccoccia, with counsel attended and took part in the Board hearings.
It should be noted at this point that Saccoccia at no time when he appeared before the Board, and gave testimony, ever raised or asserted his Fifth Amendment privilege not to testify or claim any privilege not to do so by virtue of any grant of previous immunity. Before the Board, he then virtually repeated all, with some discrepancies, of what he had previously testified to before the "RISDIC" Commission. Whether such failure to assert his now claimed privilege amounted to his waiver thereof is not now decided, because in view of the Court's following determination of his immunity contention, resolution thereof is really moot.
Taking up now Saccoccia's immunity contention.
Saccoccia, it appears, correctly postulates that he has a protected property interest in his license to practice public accountancy and that any deprivation or suspension of that right or interest must comport with the requirements of procedural due process. See, e.g. Lowe v. Scott, 959 F.2d 323, 334, licenseto practice medicine (1st Cir. 1992). That of course means that he must have been given notice of the hearing at which his right to practice was to be considered, and, of the opportunity to be heard. He was afforded those rights. He had notice of the hearing before the Board of Accountancy and he was given the right to be heard. He was heard. His complaint now, as previously noted, is that the Board of Accountancy had no right to require him to testify about matters for which he had been granted immunity and to consider evidence which he had previously given to the "RISDIC" Commission under protection from the February 11, 1992 immunity Order. He claims here that the use of that evidence by the Board of Accountancy as a ground for suspending his license to practice accountancy amounts to a penalty or forfeiture and is prohibited by the immunity given by Chapter15, Section 7, P.L. 1991. He relies upon Spevack v. Klein,385 U.S. 511 (1967); Kastigar v. United States, 406 U.S. 441 (1972) and particularly Lurie v. Florida State Board of Dentistry,288 So.2d 223 (Fla. 1974) to support his contention that the immunity granted to him encompassed protection and immunity from all State actions, including action by the Board of Accountancy with regard to the Rules and Regulations enacted by the Board for purposes of regulating the practice of accountancy. His reliance upon those authorities is misplaced. In Spevack, supra, there was no grant of immunity involved. In that case, the United States Supreme Court simply held that the privilege against self incrimination applied to attorney disciplinary proceedings and that the assertion of the privilege by an attorney, without more, is not a valid basis for disbarring an attorney. Kastigar, supra, at p. 453 holds that the use of compelled testimony given previously under grant of immunity cannot be used again "to the infliction of criminal penalties on the witness." Lurie, supra, appears from the later Florida decisions to be somewhat of a legal curiosity that the Florida courts have been whittling away at. In 1980, the Chief Judge of the Fourth District Court of Appeals restated that it was a "tragic mistake". City of Hollywood v.James Washington, 384 So.2d 1315, 1320 (Fla. 1980). This Court has been unable to find any judicial support outside of Florida for the reasoning used by the one judge majority in Lurie,
supra. The New Jersey Supreme Court is the only known Court to have cited Lurie, but then only in support of thedissenting opinion in Lurie. Fulginiti v. Cape May CountySheriff's Department, 488 A.2d 250, 257 (N.J. 1985) In 1982Section 914.04 of the Florida statutes was amended by 82-393 Section 1, Laws of Florida (1982) and Lurie is no longer the law in Florida.
The basic and fatal weakness in plaintiff's appeal is in his contention that the disciplinary proceeding before the Board of Accountancy was a criminal proceeding. It was not, it was a civil licensing regulatory proceeding. The immunity granted him by the Presiding Justice's Order must be read in light of the underlying immunity wording contained in Section 7 of Chapter 15, P.L.1991. The statutory wording and language refers to immunity from criminal prosecution and penalties and forfeitures imposed as part of punishment for crimes. See, Fulginiti v. Cape MayCounty Sheriff's Department, 488 A.2d 250 (N.J. 1985); In reDaley, 549 F.2d 469 (7th Cir. 1977); Napolitano v. Ward,457 F.2d 279 (7th Cir. 1972) cert. den. 409 U.S. 1037 (1972); Childsv. McCord 420 F. Supp. 428 (D. Mo. 1776) affirmed 556 F.2d 1178
(4th Cir. 1977); Ciravolo v. The Florida Bar, 361 So.2d 121, 124 (Fla. 1978); In the Matter of Anonymous Attorneys v. BarAssociation of Eire County, 362 N.E.2d 592, (N.Y. 1977);Segretti v. The State Bar of California, 544 P.2d 929, 932-933 (Cal. 1976) Maryland State Bar Assoc. v. Sugarman, 273 Md. 306,329 A.2d 1, cert. den. 95 S.Ct. 1397 (1975). See also,Annotation, 62 ALR 3 1145, re use in disbarment proceedings of testimony previously given under grant of immunity.
In this case, no criminal proceedings have been commenced against Saccoccia. The Board of Accountancy instituted disciplinary proceedings against him as a licensed Certified Public Accountant who was certainly subject to the Board's Rules and Regulations enacted pursuant to § 5-3-4(f) R.I.G.L. Such a proceeding is not criminal in nature for purposes of the Fifth Amendment privilege against self incrimination. See, e.g.Segretti v. The State Bar of California, supra, 932-934. The action taken on the license holder for violation of any Board of Accountancy Rule is not considered to be a "penalty" or "forfeiture" unless imposed as part of a sentence or as part of the punishment for the commission of a crime. Fulginiti v. CapeMay County Sheriff's Department, 488 A.2d 250, 254-256 (N.J. 1985).
Saccoccia in this appeal however, asserts that the disciplinary proceedings by the Board of Accountancy are criminal rather than civil. He reads § 5-3-1 et seq. R.I.G.L. as being a penal statute because it includes provision for criminal sanctions in § 5-3-19 therein. He misreads and misinterprets Section 19 as it fits into the general civil regulatory provisions of the entire Chapter 3. Section 16 in Chapter 3,
simply provides that certain accounting actions by unlicensed persons, and certain actions by licensed accountants are declared to be unlawful, and a misdemeanor penalty for the commission ofSection 16 unlawful acts is provided in Section 19. Section19 specifically provides that any criminal proceeding against a licensed accountant for violation of anything declared unlawful in Section 16 is left to the "discretion" of the Attorney General. Saccoccia was not proceeded against pursuant to Section19 by the Attorney General for violation of any Section 16
"unlawful act". He was proceeded against instead by the Board of Accountancy pursuant to the civil portion of the statute in question, § 5-3-14. That proceeding was to determine if Saccoccia had violated any of the rules and regulations which had been enacted by the Board of Accountancy for the purpose of regulating the professional conduct of licensed accountants in the State of Rhode Island so as to insure for the general public, the maintenance of "the high standards of competency and integrity of public accounting." § 5-3-4 R.I.G.L.
Accordingly, Saccoccia when he appeared before the Board to answer the charges made against him of unprofessional conduct discreditable to the accounting profession went to that hearing and participated therein without the cloak of immunity he claims to have obtained by virtue of the Presiding Justice's February 11, 1992 Order, and in the alternative, if he did have it with him, he waived its protection by failing to assert and claim its protective existence before testifying before the Board.
IV.
The Board Findings
Saccoccia in this administrative appeal questions the reasonableness of the Board's findings of fact and its conclusions of law therefrom. As noted earlier, this Court cannot substitute its judgment on questions of fact previously determined by the Board. If there is any legally competent evidence in the certified record which supports the Board's findings this Court is required to affirm the Board's findings, even in those situations where the Court might be inclined to have made an equally reasonable different finding. In short, except in those cases where a Board's findings are completely bereft of any evidentiary support in the hearing record, this Court must yield to the Board's findings, and the only questions then remaining available for review are questions of law. St.Pius X Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989).
In this case, the certified record of the hearing before the Board contains evidence of actions taken by Saccoccia as a purported "straw" for his client Thomas D'Andrea and Comstock Associates which would most certainly permit the Board to conclude therefrom that Saccoccia had indeed been nothing more than a "straw borrower" for properties for which the true owners thereof were unable to obtain financing for. In his testimony before the "RISDIC" Commission Saccoccia testified that he was a straw borrower. In his later testimony before the Board he denied that he was a straw borrower. Saccoccia also testified before the "RISDIC" Commission that he took out a $720,000.00 loan for the purchase of property owned by "Steven and Nick DiVona", two of the principals in Comstock Associates, because Comstock Associates had exceeded its borrowing limit with the Rhode Island Central Credit Union. In his testimony before the Board he testified that no one had actually told him that Comstock Associates had actually reached its lending limit. He admitted receiving $23,100 as a fee for his dealings regarding the loans. He told the "RISDIC" Commission that the $23,100 was an inducement to him for getting the loans; before the Board, he denied it was an inducement.
On another occasion, Saccoccia testified before the Board that in December of 1989 he borrowed $1,060,000 to purchase real estate for Comstock Associates and that despite the fact that all of the mortgage and financing notes were in his name, that he expected to have no personal liability on the loan because Comstock Associates would make all payments on the loan.
Saccoccia also testified regarding another loan taken out by him from the Rhode Island Central Credit Union for the purchase of three condominiums at D'Andrea's request. That loan was for in excess of $400,000.00. Once again Saccoccia testified that he understood that he would have no personal liability on the note he signed, and that he would not suffer any loss because of it.
In answer to questions put to him at the Board hearing, Saccoccia testified that he actually borrowed in excess of two million dollars from the Rhode Island Central Credit Union to purchase real estate and that he at no time participated in any of the negotiations for the purchase price or the financing arrangements for the properties involved. His actions above noted are part of, and samplings from the complete hearing evidence that was available to the Board and from which the Board was able to conclude that "Saccoccia intended to deceive" the Rhode Island Central Credit Union into believing that he was the real borrower of its money and that he fully intended to honor his financial commitments arising from the promissory notes he personally signed. In addition, the record here also permits the Board's finding that Saccoccia's "RISDIC" Commission testimony was truthful (finding 23) but that on "several occasions Saccoccia testified before the Board in contradiction "to that previous truthful testimony (finding 22). The Board's ultimate conclusions that Saccoccia "violated § 5-3-12(d) and (h) by violating a rule of professional conduct by engaging in conduct discreditable to the public accounting profession" and that he "committed an act discreditable to the accounting profession in violation of Rule 4.1 of professional conduct" and Rule 4.4 as to creating a conflict of interest in his service as a public accountant are clearly supported by the record of the hearing before the Board. Saccoccia, based upon the evidence before the Board hearing was either the dumbest and most naive certified public accountant in the world, or, was a qualified and competent certified public accountant who unfortunately decided to cross the line of propriety in order to assist a client and in so doing violated the rules and regulations of the Board of Accountancy and was suspended. Accordingly, the Board in its decision concluded that Saccoccia was the latter, and in that conclusion this Court concurs.
This Court concludes from its review of the certified record that no substantial rights of the appellant have been unlawfully prejudiced because of the Board's findings, inferences, conclusions or decision; that such are not in violation of any constitutional or statutory provision or in excess of the statutory authority of the Board, or made upon unlawful procedure or affected by other error of law. The Court finds that the Board's decision is not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and is not arbitrary, capricious, or characterized by any abuse of discretion or clearly unwarranted exercise of the Board's discretion. Accordingly, the plaintiff's appeal is denied and dismissed. The previous Order of the Court staying the suspension order of the Board of Accountancy is vacated.
Counsel shall prepare the appropriate judgment for entry by the Court within ten (10) days.