205 N.J. Super. 456 (1985)
501 A.2d 197
JFK MEMORIAL HOSPITAL, PLAINTIFF,
v.
CAROL KENDAL, AS ADMINISTRATRIX OF THE ESTATE OF WALTER L. AUSTIN AND THE ESTATE OF WALTER L. AUSTIN, DEFENDANT,
v.
ALLSTATE INSURANCE COMPANY, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided September 6, 1985.
*457 Robert K. Cowles for plaintiff (Slater & Tenaglia, attorneys).
Uri Hugo Taenzer for defendant Walter L. Austin (Taenzer, Friedman & Ettenson, attorneys).
Gary F. Piserchia for third-party defendant Allstate (Parker, McCay & Criscuolo, attorneys).
HAINES, A.J.S.C.
Walter Austin died. The treating physician was of the opinion that death resulted from a cerebrovascular accident which occurred when he was driving an automobile. His estate claims PIP benefits from the Allstate Insurance Company which insured the automobile. Allstate defends on the ground that the decedent's accident is not covered by the applicable section of the PIP statute, N.J.S.A. 39:6A-4, which provides PIP coverage when injuries occur as "a result of an accident while occupying, entering into, alighting from or using an automobile." It moves for summary judgment dismissing the complaint. The estate opposes the motion, arguing that the broad statutory language requires coverage.
Read literally, the statutory language supports the estate. The decedent did die as "a result of an accident while occupying ... or using an automobile." A literal reading, however, may *458 not disclose legislative intent. N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330 (1972). Indeed, it may be quite contrary to that intent. Such is the case here.
The language in question has gone through three changes. When the No-Fault Law was first adopted, L. 1972, c. 70, it provided coverage to a person "who sustained bodily injury as a result of an automobile accident." Later that year, the language was changed to permit recovery by a person "who sustained bodily injury as a result of an accident involving an automobile." L. 1972, c. 203. The present statute, reflecting changes made by L. 1983, c. 362, provides for the payment of benefits to a person "who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile."
The problem, of course, is one of identifying legislative intent. Initially, it must be acknowledged that the statute is to be read liberally in order to provide coverage. In Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85 (1981) the Supreme Court said:
Moreover, the Act itself requires us to construe its provisions liberally in order to effect the legislative purpose to the fullest extent possible. N.J.S.A. 39:6A-16. The No Fault Act is social legislation intended to provide insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation Mandated as a social necessity, PIP coverage should be given the broadest application consistent with the statutory language. [at 90]
This ruling came before the 1983 amendment. The only history providing any insight into the Legislature's intention in 1983 is the following comment taken from the introductory statement to Assembly Bill 3981 (later L. 1983, c. 362):
5. No-Fault and Related Clean-Up Provisions
These provisions mainly are designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law.
In Uzcatequi-Gaymon v. N.J. Mfrs. Ins. Co., 193 N.J. Super. 71 (App.Div. 1984), a case in which the PIP claim resulted from a shooting during a robbery involving an automobile, Judge Botter considered the 1983 amendment. He said:

*459 The Legislature obviously intended more restrictive coverage than that afforded by the language "involving an automobile." We cannot say the Legislature intended a strict interpretation of N.J.S.A. 39:6A-4 prior to this amendment. The statute in its original form limited benefits to those who were injured "as a result of an automobile accident." This was broadened by an amendment passed soon after its adoption to substitute the phrase "involving an automobile accident" for the term "automobile accident." Thus, the Legislature by successive amendments has enlarged and contracted the class of accidents that are intended to be covered. We are satisfied, however, that the fatal injuries suffered by decedent in this case were never within the class intended by the Legislature to be covered by automobile insurance under any form of the statute. [at 75-76, citations omitted]
The factual situation in Uzcatequi-Gaymon does not match present circumstances and may therefore be distinguishable. Further, the opinion does not explain why the language in the 1983 amendment, "bodily injury as a result of an accident while occupying ... or using an automobile" cannot be read generously instead of restrictively, except in the unsupported assertion that the injuries suffered by the decedent in that case "were never within the class intended by the Legislature to be covered." Nevertheless, the appellate interpretation is entitled to considerable weight in this court even if it is not binding by reason of factual differences. Indeed, for the purpose of interpreting the statute the facts are not essentially different; neither "accident" was causally related to the presence of an automobile.
Judge Botter's conclusions do find some support in the introductory statement quoted above although that statement is ambiguous. It indicates an intention "to tighten statutory eligibility requirements" for PIP coverage. It also indicates an intention "to comport with the original intent of the No-Fault Law." The original intent was to provide broad coverage as acknowledged in the Uzcatequi-Gaymon opinion.
A better source of legislative intent may be found in the Report of the Automobile Insurance Study Commission (1971), which forms the basis of our No-Fault Law. This is clear from the statement attached to Assembly Bill 667, eventually adopted as the No-Fault Law, which stated:

*460 This legislation encompasses the recommendations of the Automobile Insurance Study Commission created under Joint Resolution 4 of 1970.
The message from the Governor at the time he signed the No-Fault Bill into law corroborates this fact. It included the statement: "Assemblyman Raymond served as Chairman of the Automobile Insurance Study Commission which prepared the Report and recommendations upon which the law was based."
The commission's recommendations deal with automobile insurance, including PIP coverage. Automobile collisions and the like are the subject of the report. Typically, its recommendation no. 1, relating to PIP coverage, calls for "the prompt coverage of automobile accident insurance benefits." (at x). It talks in terms of tort. For example, in dealing with the purpose of PIP benefits, the report states: "Many accident victims in New Jersey and elsewhere do not recover damages in tort for injuries sustained because of their inability to prove liability against third parties and their insurers." (at xi).
The original no-fault legislation was designed to carry out the commission's recommendations. There is no reason to believe that the two amendments of the statute were designed for any other purpose. The introductory statement to the 1983 amendment indicated that it was "to comport with the original intent of the No-Fault Law." I read that intent, historically, to have been to provide no-fault PIP protection for automobile-connected injuries and deaths. There is no indication that the Legislature intended to provide health insurance, e.g., coverage for injuries occurring from the failure of the human body to function properly as a result of internal, not external causes. Were the opposite true, every person "injured" while leaning against, sitting in, or perhaps looking at, an automobile would have PIP coverage. That is much more extensive coverage than anything in the history of the statute indicates to have been within the contemplation of the Legislature.
The decedent in the present case suffered a "cerebro-vascular accident," defined in 1 J.F. Schmidt, Attorneys' Dictionary of Medicine and Word Finder (1985), as follows:

*461 1. The breaking of a blood vessel within or about the brain; cerebral hemorrhage; apoplexy; stroke.
2. The condition resulting from thrombosis or embolism of the blood vessels of the brain.
This medical definition and its use of the word "accident" does not have the same meaning as the word "accident" as used in the No-Fault Law. An automobile must be a causative factor of an accident to be within the meaning of that term in that law. Were it otherwise, only the place where a stroke occurred would be determinative  on a couch in the living room, no PIP coverage; in the front seat of an automobile, PIP coverage. This cannot have been the Legislature's intention.
Austin's accident is not within the law. Allstate's motion for summary judgment dismissing the estate's PIP claim must be granted.