214 N.J. Super. 309 (1986)
518 A.2d 1138
RUTH A. SCHOMBER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WALTER B. SCHOMBER, PLAINTIFF,
v.
PRUDENTIAL INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division, Gloucester County.
Decided October 9, 1986.
*310 Eugene P. Chell, Woodbury, for plaintiff.
John P. Montemurro, Haddonfield, for defendant (Tomlin, Clark & Hopkin, attorneys).
*311 HOLSTON, J.S.C.
This case comes before the court on cross-motions for summary judgment by plaintiff and defendant. There is no dispute of the facts which are, that on October 20, 1983, decedent, Walter B. Schomber, was operating his pickup truck when he suffered a heart attack. The vehicle subsequently struck a utility pole. The medical examiner listed the sole cause of death as acute and chronic coronary atherosclerotic disease with congestive heart failure (heart attack). No other vehicles were involved in this incident. The autopsy listed no injuries resulting from the vehicle striking the utility pole.
The vehicle driven by decedent was insured by Prudential Property & Casualty Insurance Company (defendant). Ruth A. Schomber, widow of decedent, filed a claim with defendant under the personal injury protection (PIP) coverage of the policy alleging that she is entitled to survivor income continuation benefits, survivor essential service benefits, funeral expenses and death benefits. This claim is the basis for the present action.
The issue to be decided is whether N.J.S.A. 39:6A-4 allows plaintiff to recover the aforementioned benefits as a result of the instant accident. N.J.S.A. 39:6A-4 states in part:
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. [Emphasis supplied]
Plaintiff contends this statute allows PIP benefits when (a) there is bodily injury; (b) said injury is the result of an accident; *312 and (c) the accident occurs "while occupying, entering into, alighting from or using an automobile." Plaintiff states the heart attack was the accident, occurring "while occupying the automobile" and, therefore, the statutory criteria have been met. Defendant construes the statute as allowing PIP coverage only when the claimant's death is caused by an accident involving a motor vehicle.
Defendant relies principally upon the recent judicial interpretation of the statute in JFK Memorial Hospital v. Kendal, 205 N.J. Super. 456 (Law Div. 1985). The factual situation in Kendal was very similar to the instant case in that the insured decedent in Kendal, died as a result of a "cerebrovascular accident (stroke) which occurred when he was driving an automobile." Id. at 457. The court traced the history of N.J.S.A. 39:6A-4:
The language in question has gone through three changes. [sic] When the No-Fault law was first adopted, L. 1972, c. 70, it provided coverage to a person "who sustained bodily injury as a result of an automobile accident." Later that year, the language was changed to permit recovery by a person "who sustained bodily injury as a result of an accident involving an automobile". L. 1972, c. 203. The present statute, reflecting changes made by L. 1983, c. 362, provides for the payment of benefits to a person "who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile". [Id. at 458]
The court then analyzed the legislative intent of the statute throughout its revisionary period. It quoted the introductory statement to Assembly Bill 3981 which stated the no-fault provisions of N.J.S.A. 39:6A-4 (as amended in 1983) were mainly designed to "tighten statutory eligibility requirements for PIP coverage so as to comport with the original intent of the no-fault law." Ibid. The court stated the statute's historical intent was to provide no-fault PIP protection for automobile connected injuries and deaths. Id. at 460. It stated further the Legislature could not have intended to provide coverage for injuries resulting from the human body's failure to function properly internally. Ibid. If such coverage were permitted, "every person injured while leaning against, sitting in, or *313 perhaps looking at an automobile, would have PIP coverage." Ibid.
The opinion in Kendal, concluded by stating the medical definition of "accident" does not have the same meaning as the term "accident" as it appears in the No-Fault Law. Therefore, the automobile "must be a causative factor of an accident to be within the meaning of that term in that law." Id. at 461.
The holding in Kendal, is by a court of like jurisdiction and while the opinions of courts of coordinate jurisdiction should be taken into consideration, they are nevertheless not binding on a court of equivalent rank. Manturi v. V.J.V., Inc., 179 N.J. Super. 300, 306 (App.Div. 1981); Wolf v. Home Insurance Co., 100 N.J. Super. 27, 35 (Law Div. 1968), aff'd 103 N.J. Super. 357 (App.Div. 1968). N.J.S.A. 39:6A-16 in applicable part reads "This act shall be liberally construed so as to effect the purpose thereof." Legislation involving automobile insurance must be liberally construed to give the broadest protection to automobile accident victims consistent with the language of the pertinent statute. Amiano v. Ohio Casualty Insurance Company, 85 N.J. 85, 90 (1981); Cheatham v. Unsatisfied Claim and Judgment Board, 178 N.J. Super. 437, 443 (App. Div. 1981): Brokenbaugh v. N.J. Manufacturers Insurance Co., 158 N.J. Super. 424, 429 (App.Div. 1978): Miskofsky v. Ohio Casualty Insurance Co., 203 N.J. Super. 400, 410 (Law Div. 1984). For the following reasons, this court finds that N.J.S.A. 39:6A-4 provides coverage for plaintiff in the case at bar.
Generally, a court's duty in construing a statute is to determine the intent of the Legislature. AMN, Inc. v. So. Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 525 (1983). In determining legislative intent, a court must consider not only the language of the statute but also the circumstances around the time of the statute's adoption. Fulginiti v. Cape May County Sheriff's Dept., 199 N.J. Super. 56, 63 (App.Div. 1985). If a statute replaces or amends a previous one, the statute also must be read in light of the prior law, the mischief sought to be *314 eliminated and the proposed remedy. Id. at 65 (citing Brewer v. Porch, 53 N.J. 167, 174 (1969)).
Although a Legislature's joint statement regarding a statute may be used to ascertain legislative intent, it is the statute's express language that determines in what manner and to what extent the Legislature sought to attain their goals. Fulginiti, supra. In the final analysis, it is the statute as written that must govern. Perez v. Pantasote, Inc., 95 N.J. 105, 114 (1984). If a word in a statute is given a statutory definition, that definition is controlling but otherwise, the word will be given its common ordinary meaning. Reliable Volkswagen Sales & Service Co. v. World-Wide Automobile Corp., 216 F. Supp. 141 (D.C.N.J. 1963); see also N.J. Power & Light Co. v. Denville Tp., 80 N.J. Super. 435, 440 (App.Div. 1963) (In construing a statute the words used therein shall be given their generally accepted meaning unless another or different meaning is expressly indicated).
The New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., provides the definition of certain words and terms as they are to be applied within the act. See N.J.S.A. 39:6A-2. However, nowhere in this act is the word "accident" defined. This is crucial to the case at bar because plaintiff contends the accident was the heart attack decedent suffered, while defendant asserts the accident must involve or be caused by the automobile. The word "accident" as defined in the dictionary is "an unforeseen and unplanned event or circumstance." Webster's Ninth New College Dictionary (1984 ed.) Black's Law Dictionary (5 ed.) defines "accident" in an insurance contract context as being "an unexpected happening without intention or design." New Jersey decisional law defines an "accident" as an injury-causing event, one which is unforeseen, unusual and unexpected. Simply put, an accident is an unexpected, unintended happening. Sciascia v. American Insurance Co., 183 N.J. Super. 352, 355 (Law Div. 1982), aff'd o.b. 189 N.J. Super. 236 (App.Div. 1983) (court defined "accident," then did not allow uninsured motorist coverage because *315 shooting was not an accident "arising out of the use of an automobile" as specifically enunciated in the insurance policy).
The word "accident" as applied within the meaning of N.J.S.A. 39:6A-4, is not limited to a mishap resulting from or involving an automobile. The injury for which a claim is made does not have to be caused by the automobile impact. It has been held that an assault was an accident within the meaning of the statute. Smaul v. Irvington General Hospital, 209 N.J. Super. 592, 593 (App.Div. 1986); see also Pennsylvania Nat'l. Mut. Cas. Co. v. Miller Estate, 185 N.J. Super. 183 (App.Div. 1982) (Intentional occurrence, produced by design of the actor but wholly unexpected and untoward from the standpoint of the victim, is an "accident" within the purview of personal injury protection benefits mandated to be included in automobile liability policies). The court in Pennsylvania Nat'l commented on the legislative intent of "accident": "We believe that `accident' was a handy common noun which came as close as the Legislature could come to describing something which went beyond the ordinary and anticipated safe operation of an automobile." Id. at 187. Considering both the case law interpretation and common ordinary meaning of "accident," it is clear, decedent's heart attack must be deemed an accident within the context of N.J.S.A. 39:6A-4; he "sustained bodily injury as a result of an accident...."
This court must now determine if the accident occurred "while occupying, entering into, alighting from or using an automobile." The term "while" is crucial to this further analysis. Webster's Dictionary, supra, defines the conjunction "while" as meaning "during the time that; as long as." Applying this definition to the statute, it means the accident must occur at the same time the insured is "occupying, entering into, alighting from or using an automobile." The decedent in the case at bar satisfies these requirements because he suffered the heart attack while using his automobile.
*316 However, further analysis of the statute and its previous application is required to determine legislative intent. The original form of N.J.S.A. 39:6A-4 was amended by L. 1972, c. 203 which replaced the words "as a result of an automobile accident" with "as a result of an accident involving an automobile." L. 1983, c. 362 completely removed the words "involving an automobile" and replaced them with "while occupying, entering into, alighting from or using an automobile." These added terms strongly suggest a requirement of physical proximity to the automobile. In Uzcatequi-Gaymon v. N.J. Mfrs. Ins. Co., 193 N.J. Super. 71, 76 (App.Div. 1984), the court stated "the Legislature, by successive amendments enlarged and contracted the class of accidents that the statute intended to cover." Thus, the 1972 amendment broadened the class of accidents to be covered by replacing "automobile accident" with "involving an automobile" thereby allowing coverage for other accidents than those resulting exclusively from an automobile accident.
However, the 1983 amendment had a dual purpose. The Legislature, by removing "resulting from an automobile accident" in 1972, then removing "involving an automobile" in 1983, clearly intended to remove the automobile as the sole causative element of the injuries sustained. The Legislature sought to provide coverage for a much larger class of injuries and accidents than those resulting exclusively from the physical impact of an automobile with anything else. The statute in its present form only requires that the insured be getting into, exiting from or occupying the automobile at the same exact time as the accident's occurrence. If the Legislature had intended to limit coverage solely for injuries caused by an automobile impact or mishap itself, the statute in its present form would contain "as a result of" or "caused by." By removing all references to these terms, the Legislature clearly sought to provide coverage for a broader class of accidents.
The Legislature also contracted the class of people to be covered (not the class of accidents) in 1983 by adding the terms requiring physical proximity to the vehicle. Before the amendment, *317 this was an unsettled issue in the courts. Uzcatequi-Gaymon involved an incident, before the 1983 amendment, where the insured was in a public phone booth standing next to his car. When he refused to relinquish his car keys during a robbery attempt, he was shot and killed. After reviewing the statutory history (discussed above), the court denied coverage because, even though the protected class of accidents was broadened by the 1972 and 1983 statutory amendments, the type of "fatal injuries suffered by the decedent were never within the class intended by the Legislature to be covered by automobile insurance under any form of the statute". Ibid. The basis for this reasoning was that the car played no part in the injury; decedent was away from the car.
But in Purdy v. Nationwide Mutual Ins. Co., 184 N.J. Super. 123 (App.Div. 1982), the court allowed recovery under N.J.S.A. 39:6A-4 in its pre-1983 amended form. The case involved a woman who, while riding a "dirt bike," was blinded by automobile lights, causing her to collide with a telephone pole. The court reasoned the pre-1983 statute required only that there be an accident and that an automobile be involved. Id. at 127. The court in Purdy adopted Judge Thomas' interpretation of the statute in Harlan v. Fidelity & Cas. Co., 139 N.J. Super. 226 (Law Div. 1976):
... If the named insured or a member of his family is injured as a result of an accident involving an automobile, it makes no difference if the injured person was, at the time of the accident, riding in a car or on a bicycle, motorcycle, truck, snowmobile, horse, donkey or bus. Such is the plain language of the statute [at 229.]
In Vicari v. Nationwide Insurance, 174 N.J. Super. 463 (App.Div. 1980), the court allowed recovery under N.J.S.A. 39:6A-4 (pre-1983 amended form) for the decedent who suffered fatal injuries as the result of a guywire being released from a tractor trailer and striking him in the face. At the time of the accident, the truck was blocking traffic and the decedent was rendering assistance. The accident that killed the decedent occurred while he was standing next to the truck, approximately *318 six car lengths away from his own automobile. The court reasoned: "Because the injury was sustained during an effort by decedent related solely to the forward progress of the vehicle rather than for an unrelated purpose, we find such injury did result from an accident "involving an automobile."" Id. at 468.
In Newcomb Hospital v. Fountain, 141 N.J. Super. 291 (Law Div. 1976), the court allowed coverage for a claimant who was injured outside his car when his radiator exploded. Liberally construing "occupant" in favor of the insured, the court stated it was "not always necessary to be physically confined within the vehicle to acquire occupant status." Id. at 294.
Clearly, the Legislature's 1983 amendment had a dual purpose. The first was to broaden the class of accidents covered by removing "involving an automobile." The amendment's second purpose was to respond to the ambiguities raised in the cases before 1983. The Legislature sought to limit coverage only to those "occupying, entering into, alighting from or using an automobile." The cases preceeding the amendment raised obvious questions of physical proximity to the automobile and the amendment unequivocally clarified the requirement that the car be more than a mere unattending circumstance in the injury. The amendment patently alleviated the concern raised by the court in Kendal, supra, that the statute could conceivably allow coverage for people "leaning against, sitting in or perhaps looking at an automobile."
Smaul, supra is a recently decided case which clarifies N.J.S.A. 39:6A-4 in its present form. The focus of a court in determining whether PIP coverage will be allowed, must be on the automobile's role in the accident. The court, citing Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29, 37 (App.Div. 1973), aff'd o.b. 65 N.J. 152 (1974) stated:
We have long held that the insurance policy does not require that the injury be directly or proximately caused by the automobile itself by its motion or *319 operation. There need only be a substantial nexus between the injury and the use of the car. [Smaul, supra 209 N.J. Super. at 595; citation omitted].
The test a court must implement when applying N.J.S.A. 39:6A-4 is whether, in a practical sense, the automobile was merely an attending circumstance that was unrelated to the accident or whether it had a sufficient nexus to the accident to come within the statute. Id. at 594. In Smaul, the driver had stopped to ask directions when he was assaulted. He was pulled from his car, robbed and cut on the forehead with a knife. In allowing coverage the court reasoned that "it is foreseeable that a driver of a car will, at times, stop for directions while operating his vehicle and that in doing so, he may be injured as a result of an assault by another. Therefore, this court finds that the plaintiff is entitled to protection under N.J.S.A. 39:6A-4." Id. at 596.
Applying the aforementioned reasoning to the case at bar, this court finds there was a sufficient nexus between the heart attack and the automobile to provide coverage. It is certainly foreseeable that accidents like heart attacks, strokes, fainting spells and the like could occur not only while one is occupying an automobile but more important, while an insured is operating an automobile. The automobile was not merely an "attending circumstance." An automobile is a potentially dangerous mode of transportation. The fact that an accident could occur while one is occupying or using an automobile creates a much greater risk and potential for injury than if one is next to or standing away from an automobile. In providing PIP benefits, the Legislature clearly recognized this increased risk of danger and sought to compensate those injured "as a result of an accident while occupying, entering into, alighting from or using an automobile." The decedent clearly falls within the class of persons sought to be protected by N.J.S.A. 39:6A-4 in its post-1983 form. Summary judgment is granted in favor of plaintiff.