**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a mutual company, Plaintiff and Appellee,**

v.

**ESTATE OF Kenneth GABEL a/k/a, Kenneth E. Gabel, deceased and Laurel Gabel, individually and as Personal Representative of the Estate of Kenneth Gabel a/k/a Kenneth E. Gabel, deceased, Defendant and Appellant.**

Civ. No. 950075.

Supreme Court of North Dakota.

Oct. 31, 1995.

---

Eugene F. Buresh of Reichert, Buresh, Herauf & Ficek, Dickinson, for defendant and appellant.

Paul G. Kloster of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee.

SANDSTROM, Justice.

Kenneth E. Gabel suffered a fatal aneurysm while driving his pickup truck. His wife and his estate (Gabels) appeal from summary judgment dismissing their claims against State Farm Mutual Auto Insurance Company for benefits under their no-fault insurance policy, and from an order denying their motion for attorney's fees. Because the death was not the result of an accident, and did not arise out of the use of a motor vehicle, we affirm the summary judgment. Because the insurance policy does not provide for payment of attorney's fees, we affirm their denial.

## I

Kenneth Gabel suffered the aneurysm, on February 23, 1993, while driving his pickup truck in a Dickinson parking lot. Following the aneurysm, his pickup collided with the K-mart building across the street. Death was the result of the ruptured aneurysm. Gabels sought coverage from State Farm, their automobile insurer, under the policy's no-fault clause. The parties stipulated the aneurysm was neither caused by, nor aggravated by, the trauma of the collision.

State Farm denied Gabels benefits under the policy and initiated a declaratory action to determine any contractual obligations. State Farm moved for summary judgment based on the facts stipulated by the parties. The Gabels counterclaimed alleging bad-faith, and asked the district court to award them attorney's fees. On January 25, 1995, the district court granted State Farm's motion for summary judgment, and denied the Gabels' counterclaim and motion for attorney's fees under the policy.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. The appeal was filed in a timely manner under Rule 4(a), N.D.R.App.P. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 28–27–01.

## II

Summary judgment is granted only in the absence of any genuine dispute of material fact. *Ellingson v. Knudson,* 498 N.W.2d 814, 817 (N.D.1993). The party seeking summary judgment must show that absence clearly. *Ellingson.* All evidence is viewed in the light most favorable to the party opposing summary judgment. *Ellingson.* This Court decides if the "information available to the trial court, when viewed in the light most favorable to the opposing party, preclude[s] the existence of a genuine issue as to any material fact and entitle[s] the moving party to summary judgment as a matter of law." *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985) (citing *Johnson v. Haugland,* 303 N.W.2d 533, 537 (N.D.1981)). Questions of law are fully reviewable on appeal. *Nagel v. Emmons County North Dakota Water Resource Dist.,* 474 N.W.2d 46, 47 (N.D.1991).

## III

Gabels assert this Court's holding in *Weber v. State Farm Mut. Auto. Ins. Co.,* 284 N.W.2d 299 (N.D.1979) is controlling and entitles them, as a matter of law, to partial summary judgment on the company's obligations under the policy. In *Weber,* this Court held a driver on a hunting trip accidentally shot in the back by a passenger exiting his pickup could recover under the North Dakota no-fault statute. In *Weber,* the driver was "occupying" the vehicle for no-fault purposes. *Ertelt v. EMCASCO Ins. Co.,* 486 N.W.2d 233, 235 (N.D.1992). Gabel was also occupying the vehicle within the meaning of the statute.

Occupancy is not the only no-fault requirement a potential beneficiary must satisfy. Under the North Dakota Auto Reparations Act, "accidental bodily injury" is "injury ... arising out of the operation of a motor vehicle, and which is accidental as to the person claiming basic or optional excess no-fault benefits." N.D.C.C. § 26.1–41–01(1).

### A

In addition to the occupancy requirement, the injury must arise out of the "operation of a motor vehicle." "Operation of a motor vehicle" is "operation, maintenance, or

use of a motor vehicle as a vehicle." N.D.C.C. § 26.1–41–01(13). In *Ertelt,* this Court affirmed a summary judgment denying no-fault benefits. Ertelt, after fleeing a burning car, ran about three-eighths mile to get help, ran the three-eighths mile back to the car, and then suffered a fatal heart attack. While Ertelt was not "occupying" his car within the meaning of the statute, this Court decided the case on causation grounds, stating the death was not an accident "arising out of the operation of the motor vehicle" as a vehicle. *Ertelt* at 235.

The North Dakota Auto Reparations Act was adopted, largely, from the Uniform Motor Vehicle Accident Reparations Act [Uniform Act]. As this Court has said, "Unless one believes in a miraculous coincidence in choice of words or widespread plagiarism, it is difficult to escape the conclusion that North Dakota and many other jurisdictions have enacted parts of the [Uniform Act], and efforts ought to extend toward uniform construction." *St. Paul Mercury Ins. Co. v. Andrews,* 321 N.W.2d 483, 487 (N.D.1982).

■ Both the N.D.C.C. and the Uniform Act define the insurable act as "maintenance, or use of a motor vehicle as a vehicle." N.D.C.C. § 26.1–41–01(13); Uniform Act § 1(a)(6), 14 U.L.A. 43 (1995). According to the Comment to Uniform Act § 1(a)(6), this language "describes initial eligibility for the receipt of [accidental bodily injury] benefits, which cover 'loss suffered through injury arising out of the maintenance or use of a motor vehicle.'" Uniform Act § 1(a)(6) Comment, 14 U.L.A. 47 (1995). The comment adds that the words "as a motor vehicle" limits eligibility of benefits only to those activities whose "costs should be allocated to motoring as part of an automobile insurance package." Uniform Act § 1(a)(6) Comment; 14 U.L.A. 47 (1995). Illustrating that "courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term would be more consistent with the policy of this Act," the comment explains a person slipping and falling within a parked "travel trailer" should not be awarded no-fault benefits. Uniform Act § 1(a)(6) Comment, 14 U.L.A. 47 (1995).

The policy of the Act is to provide coverage for injury "resulting directly from motoring accidents and to leave to other forms of insurance and compensation systems those losses which are tangential to motoring." Uniform Act § 1(a)(6) Comment, 14 U.L.A. 47 (1995).

■ The automobile must provide more than the location of the injury. The fact the injury took place within an automobile does not transport the accident into the scope of the no-fault act. *Alvarino v. Allstate Ins. Co.,* 370 Pa.Super. 563, 537 A.2d 18 (1988) (denying no-fault coverage to a driver bitten by a dog in a van); *Shellenberger v. Ins. Co. of North America,* 182 Mich.App. 601, 452 N.W.2d 892 (1990) (stating the injury caused to a truck driver by reaching across the cab for a briefcase did not fall within the no-fault arena).

■ Gabel's death, resulting from an aneurysm neither caused by, nor aggravated by the accident, is not within the statutory defined no-fault coverage. The Gabels offered no evidence showing the aneurysm was caused by any aspect of the use of the motor vehicle as a motor vehicle. Accidents happen somewhere. The mere fact an accident takes place within an automobile is not enough. Accidents fortuitously taking place inside an automobile are not costs we believe the legislature intended the automobile insurer to bear.

### B

■ The Act also requires the injury to be "accidental as to the person claiming ... benefits." N.D.C.C. § 26.1–41–01(1). Gabel's death, the result of an aneurysm unrelated to motoring, was not an "accident" within the definition. We do not believe the legislature intended the no-fault law to include coverage for injuries resulting from "the failure of the human body to function properly as a result of internal, not external causes. Were the opposite true, every person 'injured' while leaning against, sitting in, or perhaps looking at, an automobile would have [no-fault] coverage." *JFK Memorial Hospital v. Kendal,* 205 N.J.Super. 456, 501 A.2d 197, 199 (Law Div.1985) (holding death from a cerebrovascular accident, a "stroke," is not an "accident" for no-fault purposes). If death "results from natural processes un-

related to the victim's presence in an automobile, it is not an accident as the word is used in [the no-fault act]." *Kordell v. Allstate Ins. Co.,* 230 N.J.Super. 505, 554 A.2d 1, 2 (A.D. 1989) (holding "[a] death from an infarction fortuitously occurring in an insured vehicle is ... not an occasion for [no-fault] benefits.").

## IV

Gabel argues the language of the insurance contract obligates State Farm to pay his attorney's fees and expenses. The liability section of the contract provides:

> "SECTION I—LIABILITY— COVERAGE A
>
> * * * *
>
> "In addition to the limits of liability, [State Farm] will pay for an **insured** any costs listed below resulting from such accident.
>
> * * * *
>
> 4. Expense incurred by an **insured:**
>
> * * * *
>
> c. at our request."

Gabels assert this provision applies to no-fault coverage, although it appears only in the liability portion of the contract. The section entitled "SECTION II—NO FAULT—COVERAGE P, **What We Pay**" does not include attorney's fees.

■■■ When the language of an insurance contract is "clear and explicit, the language should not be strained in order to impose liability on the insurer." *Stetson v. Blue Cross of N.D.,* 261 N.W.2d 894, 897 (N.D.1978). If the intent is apparent from the language of the policy, we do not look to construction. *Cormier v. Nat. Farmers U. Prop. & Cas.,* 445 N.W.2d 644, 646 (N.D. 1989).

■■■ The terms of the Gabels' policy are clear. The "What We Pay" section under the "No–Fault" heading does not list attorney's fees for actions against the insurer. Nothing in the contract indicates that excerpts of the "Liability" section apply to other sections of the policy. In the absence of any language in the "No–Fault" section indicating an intent to provide attorney's fees, or that the language Gabels extracted from the liability section should apply to other sections

of the policy, we do not find any support for their argument.

■■■ Gabels assert, because State Farm, their no-fault insurer, initiated this declaratory action, they were forced to incur "attorney's fees and expenses." Gabels rely on our decision in *Sigman,* in which we noted an insured does not enter an insurance contract intending to purchase a lawsuit. *State Farm Fire and Cas. Co. v. Sigman,* 508 N.W.2d 323, 326–27 (N.D.1993). In some instances, an insurer is obligated to pay an insured's attorney's fees. *Sigman.* Gabels overlook the first footnote of *Sigman* in which we clearly stated: "In deciding this case, we express no opinion about an insurer's obligation to pay its insured's attorney fees in a declaratory judgment action when the court determines that there is no insurance coverage." *Sigman,* at 325 n.1.

Absent specific contractual or statutory authority, the "American Rule" requires parties to bear their own attorney's fees. *Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 16 (N.D.1995). Finding neither, we determine the "American Rule" to control attorney's fees in this case.

## V

The district court's summary judgment in favor of State Farm, and its decision denying Gabels' counterclaim and motion for attorney's fees, is affirmed.

NEUMANN, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, C.J., concurs in result with separate opinion.

VANDE WALLE, Chief Justice, concurring in result.

I agree with parts I, III, IV and V of the majority opinion. I concur in the result in part IV. Rather than distinguishing *State Farm Fire and Cas. Co. v. Sigman,* 508 N.W.2d 323 (N.D.1993), I would reverse it. *See Sigman, supra* at 327 (VandeWalle, C.J., dissenting).